UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

R&D FILM 1, LLC,

        Plaintiff,

    v.

DOES 1 - 46,
DOES 1 - 45,
DOES 1 - 41,
DOES 1 - 22,
DOES 1 - 51,
DOES 1 - 50,
DOES 1 - 44,
DOES 1 - 16,

        Defendants.

Case No.  C13-0050RSL
Case No.  C13-0051JLR-RSL
Case No.  C13-0052RSL
Case No.  C13-0053JLR-RSL
Case No.  C13-0054MJP-RSL
Case No.  C13-0055MJP-RSL
Case No.  C13-0056TSZ-RSL
Case No.  C13-0057RSL

ORDER OF DISMISSAL

These actions were filed on January 8, 2013.  Each of the Doe defendants is identified only by an IP address linked to the on-line sharing of the movie "The Divide." Plaintiff asserts direct and contributory copyright infringement claims against each Doe defendant.  On February 14, 2013, the Court granted plaintiff's motion to initiate early discovery from internet service providers in order to obtain information sufficient to identify the owner of each IP address.  None of the defendants was timely served (see Fed. R. Civ. P. 4(m)), nor has plaintiff amended its complaint to identify any of the Doe defendants.

After these matters had been pending for four months and the Court had

1  heard from a number of putative defendants, the Court issued orders to show cause

2  acknowledging concerns regarding the propriety of joinder and the possibility that

3  plaintiff was using the judicial authority of the United States to wrest improvident

4  settlements from *pro se* litigants under threat of huge statutory penalties.  The Court

5  stayed the above-captioned matters and required plaintiff to provide copies of all written

6  communications with the owners of the IP addresses, summaries of all oral

7  communications with those individuals, proof of R&D Film 1, LLC's ownership of the

8  copyright at issue, and the identification of all members/owners/stakeholders of General

9  Media Company, both direct and indirect, in the form of an organizational tree that

10 reaches back far enough to reveal all individual members/owners and publicly-traded

11 corporations.  In addition, the Court ordered plaintiff to show cause why these cases

12 should not be dismissed for improper joinder and/or for failure to timely serve.  Having

13 reviewed plaintiff's response, the Court finds as follows:

14     **A.  Joinder**

15          Federal Rule of Civil Procedure 20(a)(2) imposes two specific requirements

16 for the permissive joinder of defendants.  First, the right to relief against defendants must

17 arise out of "the same transaction, occurrence, or series of transactions or occurrences."

18 Fed. R. Civ. P. 20(a)(2)(A).  Second, there must be some question of law or fact common

19 to all defendants. Fed. R. Civ. P. 20(a)(2)(B).  Taking the well-pled factual allegations of

20 the complaint as true and considering the declarations of plaintiff's investigator, the Court

21 finds that these requirements are easily met.  As to each separate lawsuit, plaintiff's

22 investigator found that a user of the IP addresses identified in the action possessed a

23 pirated copy of "The Divide," that each copy was a reproduction of the same original, and

24 that the user offered for download a portion of its pirated copy at the investigator's

25 request, contributing to a fully-playable version of the movie.  Depending on how one

26 characterizes this activity, plaintiff's claims for relief arise from either the same

1  transaction (*i.e.*, its investigator's successful download of a single copy of "The Divide")

2  or a related series of transactions (*i.e.*, the incremental downloads of portions of the

3  movie from each identified IP address).  Litigating the cases will also involve common

4  questions of fact and/or law regarding the existence of a swarm, the alleged downloads,

5  plaintiff's ownership of the copyright, and the elements of infringement.  The fact that

6  persons associated with the IP addresses may have individual defenses to plaintiff's

7  claims does not change the fact that there will be some common question of law or fact:

8  not all of the legal and factual issues must be identical as to all defendants.  Patrick

9  Collins, Inc. v. Does 1-21, 282 F.R.D. 161, 168 (E.D. Mich. 2012).

10       Although the specific requirements of Rule 20 are met, the Court must also

11  determine whether permissive joinder will "comport with the principles of fundamental

12  fairness."  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000).  Factors

13  relevant to this determination include the possible prejudice to any party, delay caused by

14  joinder, the motives for joinder, the closeness of the relationship between the joined

15  parties, notice to the parties, and the effect of joinder on jurisdictional issues.  Desert

16  Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980).  In the Ninth

17  Circuit, "[w]e start with the premise that Rule 20 . . . is to be construed liberally in order

18  to promote trial convenience and to expedite the final determination of disputes, thereby

19  preventing multiple lawsuits."  League to Save Lake Tahoe v. Tahoe Reg'l Planning

20  Agency, 558 F.2d 914, 916-17 (9th Cir. 1977).

21       Jointly litigating the facts related to the eight swarms plaintiff has identified

22  and the legal issues related to infringement is more efficient for plaintiff and the Court

23  than litigating hundreds of suits involving only one IP address each.  In addition, the

24  nature of the swarm and the BitTorrent protocol, with its many pieces and multiple

25  sources, suggests that joint litigation may be necessary for plaintiff to substantiate its

26  theory that defendants acted in concert to download copyrighted material, even if the

1  segment downloaded from a particular defendant, considered alone, might not constitute

2  copyright infringement.  Defendants, on the other hand, gain no appreciable advantage

3  through individual litigation:  in either case, defendants will be able to offer individual

4  defenses to the allegations.  Nor does there appear to be any significant risk of liability by

5  association.[1]  Jointly litigating these claims also allows defendants, many of whom will

6  undoubtedly proceed *pro se*, to pool resources, rely on arguments raised by other

7  defendants, and/or benefit from the participation of retained counsel.  The only potential

8  advantage to severance appears to be the hope that plaintiff will give up its claims, no

9  matter how meritorious, in the face of mounting costs.  If, as the Court is willing to

10  assume at this stage in the proceeding, plaintiff's allegations are true and its copyright has

11  been infringed, such a result is neither just nor fair.

12        The Court further finds that there is no indication that joinder will impact

13  the Court's subject matter jurisdiction and that defendants' alleged participation in a

14  knowing and intentional file-sharing scheme constitutes interrelated acts justifying joint

15  litigation even if defendants remained unaware of the identity of their fellow BitTorrent

16  users.

17        The Court is, however, concerned about the impact that joinder has already

18  had on the handling of this litigation and how that handling reflects on plaintiff's motives

19  for amassing large groups of defendants.  To be clear, the Court finds that joinder under

20  Rule 20 for purposes of prosecuting copyright infringement claims against members of a

21  swarm in a single lawsuit can be appropriate.  Plaintiff, however, was not actually

22  prosecuting any of these actions.  Despite receiving identifying information regarding

23  some of the individuals associated with the IP addresses at issue, plaintiff failed to affect

24

25        [1]  Contra Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-AA, 2013 WL 1900597 (D. Or. May

26  4, 2013) (finding availability of statutory damages and potential that unintentional infringers could be prejudiced by being sued along with original seeder and/or serial infringers precludes joinder).

service, asserting that complications in obtaining subscriber information regarding every IP address somehow prevented it from naming any individual defendants. This approach to litigation has caused delay and raises all sorts of potential for abuse, as discussed more fully below. In addition, the failure to prosecute the actions suggests that the motive for joinder is not to promote the underlying goals of efficiency, justice, and expeditious resolution of the disputes, but rather to use the pendency of this litigation to obtain unilateral discovery regarding non-parties and to push for quick (and potentially unjustified) settlements.

In the circumstances of this litigation, the Court finds that joint litigation against numerous participants in a single swarm satisfies the specific requirements of Rule 20(a)(2) but that, as utilized by plaintiff, the joinder actually retarded the litigation and does not comport with the principles of fundamental fairness.

## B. Lack of Service

Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The complaints were filed in the above-captioned matters on January 8, 2013. Plaintiff waited over a month to request permission to conduct discovery from the internet service providers, which the Court granted two days later. No proofs of service were filed (as required by Rule 4(l)), and the Court ordered plaintiff to show cause why the cases should not be dismissed for failure to timely serve.[2]

Rather than address the service issue in its response, plaintiff simply states

---

[2] Although the Court did not point out the service issue in the order entered in C13-0051JLR-RSL, the underlying facts and analysis are identical to the other seven actions filed by R&D Film 1, LLC.

that it did not receive subscriber information from certain ISPs prior to the date on which the Court quashed the subpoenas and stayed the cases.  Plaintiff does not assert that the ISPs were recalcitrant or otherwise refused to comply with the subpoena.  On the existing record, it is impossible to conclude that plaintiff acted diligently in seeking and pursuing discovery in these matters or that good cause existed for the failure to comply with the 120-day service deadline.

Just as importantly, plaintiff offers no justification for its failure to timely serve the defendants who have been identified.  Plaintiff opted to leave those individuals in limbo, knowing of this litigation but not yet a party.  Predictably, individuals who received notice of the lawsuit from their ISP began calling plaintiff's counsel who apparently referred them to a webpage of "Frequently Asked Questions," invited them to prove their innocence, and/or negotiated settlements.  In addition, counsel sent demand letters to a handful of defendants in these cases.  Despite the Court's instruction, plaintiff has not provided copies of the demand letters and has not summarized its oral offers of settlement.  The only communication provided for the Court's review consists of two copies of an email string that arose at the tail end of settlement negotiations with a defendant related to an IP address in C13-0052RSL.  What preceded that email string is unknown, and the Court is left to guess regarding the tenor and accuracy of statements made to potential defendants.  The little information available to the Court is not reassuring.

Counsel's "educational FAQ website" is found at www.fronteirlawgroup.wordpress.com and attached to this Order as Exhibit A.  The first question is "Why am I being sued?"  Of course, the individual reading the FAQs has not yet been sued, and plaintiff does nothing to clarify the procedural posture of the case.  The email string filed under seal shows that, even at the point of consummating a settlement, the individual mistakenly believed that a case had been filed against him or

ORDER OF DISMISSAL - 6

1   her.  The second question is about the justification for the settlement demand amount, but

2   plaintiff has not provided any information regarding oral or written settlement demands in

3   the above-captioned matters.  The FAQs themselves are silent on this issue, although they

4   do mention the maximum statutory penalties and a $675,000 jury verdict in a copyright

5   infringement action in the District of Massachusetts.  Plaintiff's advice regarding the

6   association of counsel (the court will not appoint counsel in a civil suit) and the validity

7   of possible defenses (failure to password protect and/or monitor the use of your internet

8   connection may constitute negligence) is suspect.  Finally, plaintiff invites the individual

9   reading the FAQs to provide evidence proving that he or she did not download "The

10  Divide."

11          When plaintiff sought permission to conduct discovery in these cases, it

12  represented the discovery as both limited and efficacious:  by subpoenaing subscriber

13  identification information from the ISPs, plaintiff would be able to pursue these lawsuits

14  and protect its copyrights.  It turns out, however, that identifying the account holder tells

15  us very little about who actually downloaded "The Divide" using that IP address.  As one

16  court noted, "it is no more likely that the subscriber to an IP address carried out a

17  particular computer function . . . than to say an individual who pays the telephone bill

18  made a specific telephone call."  In re BitTorrent Adult Film Copyright Infringement

19  Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012).  In fact, it is less likely.  Home

20  wireless networks are ubiquitous, meaning that a single IP address can simultaneously

21  support multiple computer devices throughout the home and, if not secured, additional

22  devices operated by neighbors or passersby.  Thus, the risk of false positives is very real.

23  Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y. 2012).  It is not clear that

24  plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual

25  contentions regarding an internet subscriber's infringing activities based solely on the fact

26  that he or she pays the internet bill.  Plaintiff seems to be aware of this problem and has

1  refrained from identifying the Doe defendants more specifically even after it learns the

2  name of the subscriber.  Plaintiff does not, however, take the appropriate steps of

3  returning to the Court to seek an extension of time in which to serve and permission to

4  conduct additional discovery.  Rather, plaintiff demands that the subscriber prove he or

5  she did not download "The Divide."  Therein lies the rub.  Plaintiff has effectively

6  obtained access to unrepresented individuals and parleyed that access into open-ended

7  and unlimited discovery, despite the very narrow discovery order entered by the Court.

8          In this context, the 120-day service deadline is the only thing that limits

9  plaintiff's unsanctioned discovery expedition.  If plaintiff feels it has enough information

10 to satisfy its Rule 11 requirements by simply identifying the subscriber associated with an

11 IP address, it should serve the complaint and initiate litigation subject to the limitations

12 imposed by the rules of civil procedure.  If, on the other hand, plaintiff would have

13 trouble justifying a factual contention that the internet subscriber must, by virtue of that

14 fact, be the downloader, it should seek an extension of the service deadline by explaining

15 why it was unable to obtain the information in a timely matter and identifying steps to be

16 taken that would allow litigation to begin.  If those steps include additional discovery,

17 further permission of the Court would be necessary.  In short, plaintiff must actually

18 prosecute the claims it has asserted.  Instead, plaintiff's litigation strategy seems to be to

19 use the mere pendency of this action to create a period of time in which it can scare

20 subscribers into settlement as the only means of avoiding both litigation costs and harsh

21 statutory penalties.  The limited communications disclosed to the Court show that plaintiff

22 makes every effort to "educate" the subscriber regarding the statutory penalties he or she

23 faces.  Coupled with the clear implication that evidence of IP address ownership is legally

24 sufficient to establish copyright infringement and the demand that the subscriber prove

25 his or her innocence, it is not surprising that subscribers – whether guilty or not – may

26 choose to settle.  While the risk of improvident settlements and overreaching cannot be

ORDER OF DISMISSAL - 8

1  eradicated, the Court will not allow plaintiff to pick and choose the procedural rules it

2  likes while ignoring deadlines and discovery limitations.  Absent extraordinary and

3  unforeseeable circumstances, the service deadline will be strictly enforced in order to

4  reduce the risk of overreaching.

5

6          For all of the foregoing reasons, the above-captioned matters are

7  DISMISSED for improper joinder and failure to timely serve.  The Court need not reach

8  issues regarding ownership of the copyright and/or plaintiff's failure to provide complete

9  information regarding communications and the ownership of General Media Company.

10

11

12          Dated this 5th day of July, 2013.

13

14                  Robert S. Lasnik
                United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

ORDER OF DISMISSAL - 9